**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**VIRGINIA SALAZAR,**

**Plaintiff,**

**v.** **CIV 05-0259 LAM**

**JO ANNE B. BARNHART,**
**Commissioner of the Social Security Administration,**

**Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on ***Plaintiff's Motion to Reverse and Remand for a Rehearing*** (*Doc. 12*) filed on August 3, 2005. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 13*), Defendant's response to the motion (*Doc. 14*), Plaintiff's reply to the response (*Doc. 15*), and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED.**

## I. Procedural History

On August 28, 2001, Plaintiff, Virginia Salazar, applied for Disability Insurance benefits. (*R. at 78.*) In connection with her application, she alleged a disability since January 19, 2001. (*R. at 78.*) In connection with her application, Plaintiff alleged a disability due to arthritis, tendonitis,

depression, slipped discs and temporomandibular joint syndrome (TMJ). (*R. at 91.*) There is also evidence in the *Record* that Plaintiff suffers from hypothyroidism. *(R. at 230.)* Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 61, 68.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on August 25, 2003. (*R. at 29-58.*) Plaintiff was present and testified at the hearing. (*R. at 32-57.*) Plaintiff was represented by David Montoya of SW Vocational Services, Inc. at the hearing. (*R. at 27-29.*) On July 16, 2004, the ALJ issued his decision in which he found that Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. (*R. at 11-21.*) The ALJ made the following findings, *inter alia,* with regard to Plaintiff: (1) she met the special insured status requirements of the Social Security Act through December, 2006; (2) she had not engaged in substantial gainful activity since the disability onset date; (3) she had an impairment or combination of impairments considered "severe," based on the requirements in the Social Security regulations;[1] (4) her impairments did not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Part 404; (5) her allegations concerning her symptoms, limitations and ability to work were not credible; (6) she had the residual functional capacity (hereinafter "RFC") to perform a range of light work,[2] except that she is limited to jobs that will not expose her to fumes, odors, dust, gases, or other inhalants that might aggravate her respiratory problems and to other

[1]Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §404.1520(c). The ALJ found that Plaintiff had the following impairments considered "severe" under the regulations: degenerative disc disease in her cervical and thoracic spine, chronic cervical and thoracic strain, and asthma. *(R. at 20.)*

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

hazards such as exposed heights, open machinery, and open flames or heating elements;(7) her past relevant work did not require the performance of work-related activities precluded by the limitations and restrictions imposed by her medically determinable impairments; (8) her impairments did not prevent her from performing her past relevant work; and (9) she had not been under a "disability," as defined in the Social Security Act and Regulations, at any time since her alleged onset date of January 19, 2001. *(R. at 20.)*

After the ALJ issued his decision, Plaintiff filed a request for review. (*R. at 10.*) On January 6, 2005, the Appeals Council issued its decision denying her request and upholding the decision of the ALJ. (*R. at 7-9.*) On March 8, 2005, Plaintiff filed her complaint in this action. (*Doc. 1.*)

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation

omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214.

For purposes of disability insurance and supplemental security income benefits, a person is considered to be disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 [twelve] months." 42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A), respectively. A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 137 (1987); *see also* 20 C.F.R. §§ 404.1520 and 416.920. At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; and that either his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1,[3] or that he is unable to perform work that he has done in the past. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful

---

[3]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d), and §§ 416.920(a)(4)(iii) and 920(d).

activity considering his RFC, age, education, and work experience. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

## III. Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was forty-two years old on the date of the ALJ's decision. *(R. at 78.)* She completed the requirements for a GED. *(R. at 39, 97.)* Plaintiff has past work experience as a directory and toll telephone operator and as something she described as "hardware frames" for the telephone company.[4] *(R. at 104.)*

Plaintiff's extensive medical records document treatment at New Mexico Plastic Surgery on September 12, 1995;[5] progress notes from Presbyterian Occupational Medicine Clinic during the period from August 22, 1995 to October, 30, 1995;[6] treatment at Southwest Myotherapy PA during the period from March 12, 1999 to April 7, 1999;[7] treatment by E. Kenneth Mladinich, M.D. during the period from September 12, 1995 to December 7, 1999;[8] treatment at University Hospital, University of New Mexico Health Sciences Center, during the period from January 19, 2000 to

---

[4]Plaintiff indicates a job title of "hardware frames"(for the telephone company) on a work history form *(R. at 104)* but the job description is illegible ( ". . . moved . . . panels cable conduit. This job varied day to day.") *(R. at 107)*. The ALJ incorrectly states Plaintiff had past work as a hardware clerk *(R. at 19)* and the vocational expert also lists hardware clerk as a past relevant job *(R. at 145)*. Plaintiff's own counsel fails to challenge the hardware clerk characterization, instead noting only that the vocational expert failed to properly identify the DOT paragraph describing a hardware clerk. *(Memo in Support, Doc. 13 at 14.)* The Court finds this mis-characterization harmless error since Plaintiff's job as a telephone operator qualifies as a past relevant work.

[5]*See R. at 149* (although the documents themselves do not state where they are from, the List of Exhibits to the *Record* lists these documents as being from"New Mexico Plastic Surgery, P.D., Stephen C. Drukker, M.D." *See R. at 4*).

[6]*See R. at 150-155*.

[7]*See R. at 156-167*.

[8]*See R. at 168-182*.

January 21, 2000;[9] treatment at Lovelace Health Systems during the period from October 23, 1998 to November 12, 1999;[10] treatment at Lovelace Mental Health ParkCenter during the period from January 3, 2000 to January 18, 2000, and January 17, 2000 to May 10, 2000;[11] treatment by Anthony Reeve, M.D. at Industrial Rehabilitation Clinics, P.C. from June 28, 2000 to July 26, 2000;[12] treatment at Lovelace Family Practice Medical Clinic, Westside from August 21, 1989 to January 16, 2001;[13] treatment at Miners' Colfax Medical Center from October 17, 2001 to October 18, 2001;[14] treatment at Northeastern Regional Medical Center from October 18, 2001 to October 20, 2001;[15] treatment by and testing ordered by Jamila Tiku, M.D. from February 14, 2001 to January 7, 2002;[16] treatment at Lovelace Medical Center from February 11, 2000 to May 14, 2002;[17] treatment at Taos/Colfax Community Services, Inc. from March 5, 2002 to June 10, 2002;[18] treatment by Lee C.

---

[9]*See R. at 183-187***.** The Court notes that the "History and Physical Examination" at *R. 186* is incorrectly dated as January 19, **1999** since the dictation and transcription dates at *R. 187* are **2000**.

[10]*See R. at 189-206; R. at 188* is a March 2, 2000 letter written by William J. Wengs, M.D. describing Plaintiff's symptoms and diagnosis during a November 12, 1999 hospitalization.

[11]*See R. at 227-232* (this is a record of a hospitalization from 1/3/00 to 1/18/00), *R. at 207-226* (this is a record of therapy sessions and medication follow-ups during an Intensive Outpatient Program).

[12]*See R. at 233-240.*

[13]*See R. at 241-359.*

[14]*See R. at 360-361, 363-367* (this is a record of a hospitalization from 10/17/01 to 10/18/01).

[15]*See R. at 362, 368-373* (this is a record of a hospitalization from 10/18/01 to 10/20/01).

[16]*See R. at 377-383.* These records include blood tests *(R. at 377)*, a Radiology Report *(R. at 378)*, and a thyroid test *(R. at 382)* from Miners' Colfax Medical Center and a Gyn Cytology report from Lovelace *(R. at 383)*. There are also progress notes (*R. at 379-381*) without any identification. The List of Exhibits to the *Record* lists these documents as being "Medical Records covering the period from 02/01/01 to 01/07/02 from Jamila Tiku, M.D."

[17]*See R. at 401-422.*

[18]*See R. at 423-438.*

Caruana at Miners' Colfax Medical Center from October13, 2001 to June 26, 2002.[19] Plaintiff also submitted records subsequent to the hearing documenting treatment at Miners' Colfax Medical Center from June 17, 2002 to August 27, 2003; and treatment at Taos/Colfax Community Services from June 3, 2002 to August 19, 2003.[20]

On December 20, 2001, Martin Trujillo, M.D. conducted a physical consultative exam *(R. at 374-376)* and on March 15, 2002, Carl B. Adams, Ph.D. conducted a psychiatric consultative exam *(R. at 384-386)*. On March 20, 2002, a state agency physician completed a Psychiatric Review Technique Form (hereinafter, "PRTF") for Plaintiff. *(R. at 387-400.)* On August 25, 2002, a state agency physician completed a Physical Residual Functional Capacity Assessment (hereinafter "PRFC") for Plaintiff. *(R. at 452-459.)* Where relevant, Plaintiff's medical records are discussed in more detail below.

## IV. Discussion/Analysis

Plaintiff contends that the ALJ erred in this case by: (1) finding Plaintiff's mental impairment to be non-severe; (2) failing to make specific findings on the physical and mental demands of Plaintiff's past relevant work; and (3) finding Plaintiff's allegations concerning her symptoms and ability to work not credible. *See* ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing*** *(Doc. 13)* at 9, 12, 15. As relief, Plaintiff asks the Court to reverse and remand to the Commissioner for a rehearing. *Id.* at 19. Defendant argues that the ALJ applied the correct legal

[19]*See R. at 439-451.*

[20]*See R. at 479-505.* The Court notes that Plaintiff's representative states these records are from the Raton Mental Health and Family Practice; however, *Record* pages 479-491indicate treatment at , or laboratory tests ordered by doctors at, Miners' Colfax Medical Center and *Record* pages 492-505 are without an institutional heading but the format and signature (by Julie Swanson) are the same as earlier noted treatment from Taos/Colfax Community Services.

standards and correctly determined that Plaintiff is not disabled based on substantial evidence. *See* ***Defendant's Response to Plaintiff's Motion to Reverse or Remand for a Rehearing*** *(Doc. 14)* at 12.

**A. Severity of Mental Impairment**

At step two, the ALJ must determine if a claimant has a medically determinable impairment or combination of impairments severe enough to significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521. Basic work activities include physical functions (walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). In assessing mental impairments, the ALJ must also determine the degree of limitation in a claimant's activities of daily living; ability to maintain social functioning; any deficiencies in concentration, persistence or pace; and any episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

Plaintiff alleges that the ALJ failed to properly evaluate the severity of her mental impairments. ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing,*** *(Doc. 13)* at 9-12. Specifically, Plaintiff argues that evidence indicating the existence of a mental impairment over a number of years *(Id.* at 9*)* and the opinions and impressions of William F. Hiltz, M.D., Julie Swanson, M.A., Dr. Trujillo, and Carl Adams, Ph.D. prove Plaintiff's mental impairment. *Id.* at 9-12. Plaintiff also argues that the ALJ failed to consider that the gaps in her mental health treatment might have been due to an inability to pay the counseling fees. *Id.* at 11.

In his analysis, the ALJ noted that although Plaintiff "had extensive medical testing over the years, there is almost no objective evidence in the case file to support a finding of medically determinable physical or mental impairments." *(R. at 16.)* Therefore, the ALJ was aware that Plaintiff's alleged mental impairments spanned a number of years, but found that there was insufficient evidence to indicate the level of severity necessary for a finding of "severe" under agency regulations.

In his decision, the ALJ did not refer to any medical authorities by individual name. Instead he summarizes the findings and refers to the medical opinions by referencing the respective exhibit numbers. *(R. at 14-21.)* Dr. Hiltz' intake interview is found at Exhibit 17F *(R. at 426-428)*; Julie Swanson's therapy progress notes are found at Exhibit 24F *(R. at 492-505)*[21]; Dr. Trujillo's physical evaluation of Plaintiff is found at Exhibit 12F *(R. at 374-376)*; and Carl Adams' psychiatric evaluation is found at Exhibit 14F *(R. at 384-386)*. In his analysis, the ALJ includes Exhibit 17F *(R. at 18)*("There is some indication that Ms. Salazar's many physical complaints may be related to some form of psychosomatic disorder."); and Exhibits 12F and 14F *(R. at 19)*("The findings made by the medical and psychological experts who reviewed Ms. Salazar's records for the Administration and the reports of the consultative experts who evaluated her at the request of the Commissioner are entirely consistent.").

Dr. Hiltz conducted a psychiatric evaluation of Plaintiff on March 13, 2002. *(R. at 426-428.)* Dr. Hiltz' impression included recurrent major depression disorder *(R. at 428)* and noted that Plaintiff's past medications include Paxil and Serzone which had not helped (*R. at 426)*. Plaintiff was

[21] As Defendant notes *(Response, Doc.14 at 4)*, Julie Swanson, M.A. is apparently not an acceptable medical source pursuant to 20 C.F.R. § 404.1513(a). Section 404.1513(a) lists accepted medical sources who can provide evidence to establish impairments including licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. Plaintiff has not provided evidence that Ms. Swanson fits within any of these accepted categories.

not taking any medications for her anxiety and was "very ambivalent about antidepressants, but will consider [it]." *(R. at 428.)* (emphasis in original.) Dr. Hiltz also rated Plaintiff's Global Assessment of Functioning (GAF) as 65/70 *(Id.)*, indicating Plaintiff had some mild symptoms of depression or some difficulty in social, occupational, or school functioning, but was generally functioning pretty well.[22]

Dr. Trujillo conducted a consultative physical evaluation of Plaintiff on December 28, 2001and found Plaintiff had chronic neck and back pain, hypothyroidism, and temporomandibular dysfunction. *(R. at 376.)* Dr. Trujillo also indicated Plaintiff "suffers from anxiety and depression," and that "[a]ny physical duties or stressful employment would be limited." *Id.* On March 19, 2002, Dr. Carl Adams found the diagnoses of conversion disorder[23] and pseudoseizures[24] "certainly seems [sic] applicable," but that there "were no signs of depression or anxiety and she exhibited no pain behavior." *(R. at 385.)* There is evidence in the record that the ALJ did consider Dr. Hiltz'

---

[22]A GAF score "is for reporting the clinician's judgment of [an] individual's overall level of functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 32. A GAF score of 65/70 indicates "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.** *Id.* at 34 (bold and capitalization in original).

[23]"**Conversion Disorder** involves unexplained symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological or other general medical condition. Psychological factors are judged to be associated with the symptoms or deficits." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 485. (bold in original).

[24]Pseudoseizures resemble epileptic seizures wherein patients experience episodes of loss of consciousness, twitching or jerking, and unusual emotional states. Physicians believe pseudoseizures are psychological defense mechanisms induced by stress or episodes of severe emotional trauma and that seizures occur when patients try to avoid or forget the trauma. University of Michigan Health System, *Health Minute: Pseudoseizures*, August 4, 2003. On January 3, 2000, Plaintiff was hospitalized with an "episode" of weakness that physicians thought might be an atypical migraine *(R. at 230, 232)* and later determined to be "conversion disorder (pseudoseizures)" *(R. at 222, 227)*. Following therapy, Plaintiff indicated to Sally Kroner, M.D. that she "understood she had pseudoseizures and that she could control them." *(R. at 228.)*

interview with Plaintiff, and the consultative evaluations of Dr. Trujillo and Dr. Adams, but found Plaintiff's alleged mental impairment to be non-severe under agency regulations. 20 C.F.R. § 404.1521.

The ALJ also compared the impressions of Plaintiff's medical doctors with the diagnoses of her mental health care providers, noting:

> Given the lack of medical evidence to explain her symptoms, Ms. Salazar's medical doctors have considered whether her physical complaints are attributable to mental impairments. (See Ex. 7F at 16-17) Her mental health care providers have diagnosed depressive and anxiety disorders, but invariably conclude that she is functioning at a relatively high level psychologically and emotionally. (Exs. 7F at 21; 17F; and 14F)

*(R. at 17.)* The ALJ also noted that while Plaintiff's medical records suggest "that she may have a somatoform disorder . . . there are too many inconsistencies and instances of misrepresentation on Ms. Salazar's part in the medical record."[25] *(R. at 18.)*

On March 20, 2002, an agency physician completed a Psychiatric Review Technique Form ("PRTF") for Plaintiff. *(R. at 387-400.)* The physician noted that Plaintiff had "mild impairments in ADL's [Activities of Daily Living] and concentration, persistence and pace and no impairment in social functioning. Sometimes needs assistance with cooking. When in pain, performs all activities but at slower pace. No reported problems with social functioning. Insufficient information to assess episodes of decompensation." *(R. at 399.)* The PRTF also noted that "[f]rom [a] mental health standpoint, should be able to perform simple repetitive work." *Id.*

---

[25]"The common feature of the Somatoform Disorders is the presence of physical symptoms that suggest a general medical condition (hence, the term *somatoform*) and are not fully explained by a general medication condition, by the direct effects of a substance, or by another mental disorder (e.g., Panic Disorder). The symptoms must cause clinically significant distress or impairment in social, occupational, or other areas of functioning. In contrast to Factitious Disorders and Malingering, the physical symptoms are not intentional (i.e., under voluntary control)." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 485 (italics in original).

The ALJ noted that "the record does not reveal significant medical treatment for the preceding year and no significant mental health treatment for several months preceding her termination date." *(R. at 15.)* Plaintiff argues that the ALJ erred in failing to consider the possibility that she was unable to afford treatment. ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing*** *(Doc. 13)* at 11. On October 13, 2000, Plaintiff reported to Dr. Fitzpatrick that she had "maxed out" her counseling visits. *(R. at 247.)* However, after that date, Plaintiff attended counseling sessions at Taos/Colfax Community Services from June 3, 2002 to August 19, 2003. *(R. at 423-438 and R. 492-505)*. Plaintiff reported during the hearing with the ALJ that she was continuing counseling at Raton Mental Health.[26] *(R. at 46.)* The issue of an inability to pay for counseling was not raised in either the record or at the hearing so the ALJ was unaware of a need to consider whether financial reasons explained Plaintiff's failure to seek treatment. *See Lee v. Barnhart,* 117 Fed. Appx. 674, 679 (10th Cir. 2004) (Plaintiff "explained at the hearing that he had not received medical treatment for financial reasons, not because he did not have a severe impairment. This triggered a duty on the part of the ALJ to determine whether financial reasons in fact explained [plaintiff's] failure to seek treatment.")

The ALJ's decision shows that he reviewed the medical evidence of her mental condition, including her allegation of depression and concluded there was "no evidence to support her allegations of extreme psychological impairments." *(R. at 18.)* The ALJ indicated he had carefully considered all the evidence and reviewed the record. *(R. at 20.)* "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."

---

[26]The Court notes that Plaintiff and her representative state her mental health treatment documented at *R. 423-438 and 492-505* was at the Raton Mental Health and Family Practice Clinic, but the only document with an institutional heading indicates the treatment was at Taos/Colfax Community Services. *See R. at 429.*

*See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Based on the foregoing, the Court finds that the ALJ considered the extent of Plaintiff's mental impairment and, based on the objective medical record and Plaintiff's testimony, properly determined that Plaintiff's mental impairment was not "severe."

**B. Past Relevant Work**

At step four, the relevant analysis is whether a claimant can return to his or her past relevant work (hereinafter, "PRW"). This is a three-part analysis: first, the ALJ must evaluate the claimant's physical and mental residual functional capacity (hereinafter "RFC"); second, the ALJ must determine the physical and mental demands of the claimant's past relevant work; and third, the ALJ must determine whether the claimant has the ability to meet the job demands of his or her PRW despite the limitations associated with his or her RFC. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). However, at step four, the claimant "bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1051 (10th Cir. 1993).

In this case, Plaintiff argues that the ALJ erred at the second part of the analysis by failing to make specific findings on the physical and mental demands of Plaintiff's past relevant work. Plaintiff cites to *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) for a description of the particularized inquiry necessary when a claimant has a mental impairment. ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing*** *(Doc. 13)* at 13. However, the ALJ determined, and this Court affirms, the ALJ's decision that the Plaintiff's mental impairment was not "severe." The Tenth Circuit held, in *Westbrook v. Massanari*, that the "holding in *Winfrey* . . . is not designed to needlessly

constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability. Rather, its concern is with the development of a record which forms the basis of a decision capable of review." *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002)(unpublished).

In determining the Plaintiff's RFC, the ALJ found "no basis for a finding of significant mental or physical impairments in the assessments provided by Ms. Salazar's treating providers,"and that "[t]he findings made by the medical and psychological experts . . . and the reports of the consultative experts . . . are entirely consistent." *(R. at 19.)* Based on the evidence in the record, the ALJ found that Plaintiff had the RFC for a range of light work (able to lift 20 pounds occasionally and up to 10 pounds frequently and to sit or stand for up to six hours total during an eight hour work day), with limitations, *i.e.*, no exposure "to fumes, odors, dust, gases, or other inhalants . . . or to hazards, such as exposed heights, open machinery, and open flames or heating elements." *Id.*

The record is not without evidence of the demands of Plaintiff's past relevant work. During the hearing on August 25, 2003, the ALJ asked Plaintiff about her past work and Plaintiff responded with a description of her work as a directory assistance operator. *(R. at 39.)* Plaintiff stated, "I handled 1,200 calls a day, to 1,500. I gave telephone numbers or connected them to the number or a connection to 911." *Id.* Plaintiff included a description of her past work in a Disability Report, dated August 15, 2001, describing her job as "[s]itting at computer all day; handling over 1300 calls a day - providing tele[phone] no[.], assisting customers, typed in data, etc.," with no lifting or carrying requirements. *(R. at 92.)* Plaintiff also stated that her job included walking for one hour, standing for one hour and sitting for six hours per day. *Id.* In a Work History report, dated October 23, 2001, Plaintiff described her job of toll telephone operator as " Answer Calls gave #." *(R. at 106.)* Undated work background forms also indicate the duties Plaintiff performed while

working for Qwest as "Computer customer service assistant with #" *(R. at 142)* and "Typing, Name search, Customer service, Handling 1200-1500 calls a day, Filing, Ticket" *(R. at 143)*.

After the hearing of August 25, 2003, the ALJ submitted written interrogatories to a vocational expert (hereinafter "VE") to help determine if Plaintiff was able to perform her past relevant work. *(R. at 144-147)*. The VE stated that Plaintiff could perform her past relevant work as a telephone operator or hardware clerk[27] as both jobs were at the sedentary level and would not expose Plaintiff to the environmental limitations or hazard limitations described in the hypotheticals. *(R. at 146-147.)* Plaintiff's representative also submitted an interrogatory to the VE that included more restrictive limitations and multiple impairments and the VE responded that "the combinations of impairments would not allow claiment [sic] to work in the traditional, competitive workplace." *(R. at 148)*. In the decision, the ALJ notes that Plaintiff's representative includes "limitations in the use of her right hand and an intolerance to work stress, which have not been proven or, with regard to some, have not even been claimed during these proceedings." *(R. at 19.)*

Plaintiff alleges that the ALJ failed to include in his hypothetical question "any reference to Ms. Salazar's pain, or to her inability to deal with stress," and therefore, the ALJ cannot rely on the VE's testimony to constitute substantial evidence supporting the ALJ's decision that Plaintiff can perform her PRW. ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing*** *(Doc. 13)* at 14. However, an ALJ need only present those limitations that the ALJ finds are established by the evidence. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) ("the ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the

---

[27]See footnote 4 above for a discussion of the mis-characterization of Plaintiff's past relevant job of hardware clerk.

established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.")(emphasis in original). *See Gay v. Sullivan*, 986 F.2d 1336, 1340-41 (10th Cir. 1993) ("the ALJ's findings regarding the limited nature and effect of plaintiff's impairments . . . are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert [so] the expert's testimony provided a proper basis for adverse determination of this case.") (footnote omitted).

In this case, the record includes evidence of the demands of Plaintiff's past relevant work, *i.e.*, an inquiry by the ALJ during the August 25, 2003 hearing as well as several descriptions of the work by Plaintiff herself. The ALJ noted that Plaintiff's "doctors have repeatedly released her to return to work without restrictions," and found "no basis for a finding of significant mental or physical impairments in the assessments provide by [Plaintiff's] treating providers." *(R. at 19.)* More detailed findings examining the mental demands of a telephone operator were not necessary given the lack of medical evidence supporting Plaintiff's claims of a severe mental impairment. The Court finds the record as a whole was adequately developed and supports the ALJ's ruling that Plaintiff could return to her past relevant work and the Court finds that the ALJ's decision was based on substantial evidence.

**C. Credibility**

Plaintiff alleges that the ALJ erred in finding Plaintiff's allegations concerning her symptoms and ability to work not credible. ***Memorandum in Support of Motion to Reverse and Remand for a Rehearing*** *(Doc. 13)* at 15-18. Specifically, Plaintiff argues that the ALJ used "supposed instances of inconsistencies in the record to discredit the disabling symptoms caused by Ms. Salazar's impairments," and that the ALJ incorrectly cited to exhibits that do not support the ALJ's allegations of symptom magnification. *Id.* at 15.

In evaluating a claimant's subjective symptoms, an ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Thus, the Tenth Circuit requires an ALJ's credibility finding to be linked to substantial evidence. *Id.* However, *Kepler* "does not require a formalistic factor-by-factor recitation of the evidence;" instead, all that is required is that the ALJ set forth the specific evidence he relies on in evaluating the claimant's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The Tenth Circuit has also "emphasized that credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quotation omitted).

The ALJ noted that with "little objective medical evidence of physical or mental abnormalities in the medical record, this case depends almost entirely upon Ms. Salazar's allegations concerning her symptoms and limitations," but "there are many reasons to question the credibility of Ms. Salazar's reports concerning the intensity, frequency, and persistence of her symptoms and her claims of extreme functional limitations caused by those symptoms." *(R. at 16.)* The ALJ then cited to specific instances of inconsistencies in Plaintiff's statements, in particular inaccurate medical histories, exaggeration of the severity of medical and mental health problems, and varying descriptions of a work injury. *Id.* The Court has struggled to find and decipher all the instances cited by the ALJ in the voluminous and, at times, illegible record and does not agree with all the instances cited by the ALJ. However, the Court found sufficient evidence of inconsistencies to support the ALJ's finding that Plaintiff's allegations concerning her symptoms, limitations and ability to work are not credible.

The Court found several examples of some of the inconsistencies identified by the ALJ. As one example, Plaintiff reported a work-related back injury on June 15, 1998. *(R. 177.)* She presented several versions of that event.[28] Another example of Plaintiff's inconsistency is revealed in her inaccurate reporting of her medical history. On November 12, 1999, Plaintiff was briefly hospitalized for a "spell of aphasia and weakness with severe headache." *(R. at 191.)* Dr. Wengs' first impression was of "a posterior circulation TIA [transient ischemic attack or stroke] versus a migraine," with the feeling that the migraine was most likely. *Id. at 192.* On March 2, 2000, Dr. Wengs stated that the cause of the spell was a complicated migraine and "no evidence of posterior circulation compromise or stroke risk was found." *(R. at 188.)* Despite this diagnosis, Plaintiff continued to report "a history of stroke" *(R. at 489)*, and a "feeling health[-]wise that she might have had another stroke" *(R. at 501)*.

A third example the ALJ gives to support his finding that Plaintiff is not credible is symptom magnification and exaggeration of symptoms. On March 12, 1999, during a physical examination, Dr. Wellborn noted that Plaintiff had a limited range of motion in her neck but that "[w]ith gentle

---

[28](1) On March 9, 1999, Plaintiff reported to Dr. William Wellborn that she pulled open a 12-foot fire door and heard a "pop" between her shoulder blades but took a Tylenol and returned to work for another hour. When she left work that day, her back was 'spasming.' She returned to work the next day and reported the injury but did not work. *(R. at 177.)*

(2) On November 12, 1999, Plaintiff reported to Dr. William J. Wengs (while in the emergency room for a spell of aphasia and weakness with severe headache) that "several years back while pulling a door open at work, she felt a popping in her back and had the acute loss of motor control in her legs." *(R. at 191.)*

(3) On December 20, 2001, during a consultative physical examination with Dr. Martin Trujillo, Plaintiff reported that her low back pain began following a motor vehicle accident at age 17, her upper back, neck and shoulder pain began in 1988 due to a stressful job working at a telephone company computer. *(R. at 374.)* There is no mention of the door-opening accident of June 15, 1998.

(4) During the August 25, 2003 hearing, the ALJ asked Plaintiff about her work-related injury and Plaintiff replied that the incident occurred in November of 1999. *(R. at 40.)* Plaintiff stated that she was opening the door and "[t]he middle of my back popped . . . I was on the way out for break . . . [and] so I took some ibuprofen, laid down, went back. And by the time it was time for me to leave work, I couldn't walk out of there." *Id.*

encouragement, but no real assistance, she demonstrated full range of motion of her neck." *(R. at 175.)* Following a physical therapy session on August 9, 1999, the therapist noted that Plaintiff performed with "Maximum Effort with symtom [sic] magnification." *(R. at 507.)* On December 1, 1999, Plaintiff reported neck and shoulder pain to Dr. Mladinich and during his examination, Dr. Mladinich reported that Plaintiff "screams when I even touch her," due to a "moderate to severe cervical and trapezius spasm." *(R. at 169.)*

The ALJ set forth the reasons supporting his negative credibility assessment as required. The Court will not reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991) (quotation omitted). The ALJ's finding that Plaintiff's allegations concerning her symptoms and limitations and her inability to work are not credible is supported by substantial evidence in the record.

## V. Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards. Accordingly, the Court will **AFFIRM** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and ***Plaintiff's Motion to Reverse and Remand for a Rehearing*** (*Doc. 12*) is **DENIED**. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

Lourdes A. Martínez

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**